UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:19-cv-20987-DPG

MARY ANNE EMERIC and
NATALIA MARIE RIVERA,
on behalf of themselves and all others
similarly situated,

       Plaintiffs,

vs.

FLORIDA FINE CARS, INC., a
Florida profit corporation,

       Defendant.
_____/

## FFC'S MOTION TO DISMISS AND COMPEL ARBITRATION AND SUPPORTING MEMORANDUM OF LAW

Defendant Florida Fine Cars, Inc. ("FFC"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, and Fed. R. Civ. P. 12(b)(1), moves to dismiss the Class Action Complaint filed by Plaintiffs Mary Anne Emeric and Natalia Marie Rivera. Plaintiffs agreed to arbitrate any claim with FFC and waived any right to bring a class action against FFC. Plaintiffs also lack standing to bring any class action against FFC because they fail to allege any actual damages sufficient to confer standing and because individual questions will predominate and preclude class treatment. In support of this motion, FFC refers the Court to the memorandum of law below.[1]

---

[1] FFC has filed an accompanying Notice of Filing ("NOF") containing the Declaration of Ramin Farahmand (Ex. A) and the binding contracts between the parties in support of this motion, which the Court can consider on a motion to compel arbitration. *See supra* at § I.

1

## **MEMORANDUM OF LAW**

### **Introduction**

Plaintiffs purchased a used car from FFC. As part of that transaction, Plaintiffs entered into a contract under which they agreed not only to arbitrate any claims arising from or relating to their credit application and vehicle purchase, but also agreed to delegate the "gateway" issues of interpretation, scope and arbitrability to arbitration:

> Any claim or dispute, whether in contract, tort, statute or otherwise (***including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute***), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting contract or relationship (including with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. … Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action.

The Supreme Court has instructed that such agreements are enforceable. *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 2777-89 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). Indeed, where a contract contains a delegation provision similar to the Plaintiffs' agreement with FFC, the Court "only retain[s] jurisdiction to review a challenge to that particular provision. Absent a direct challenge, [it] must treat the delegation provision as valid and allow the arbitrator to determine the issue of arbitrability." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015).

Here, Plaintiffs plainly waived any right to file a lawsuit or class action. They also ignored the contract's requirement that they first attempt pre-suit mediation, also requiring dismissal. Ultimately, however, the Court need not reach any of this because Plaintiffs agreed to submit to

2

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

arbitration the issue of whether the arbitration provision even applies. Accordingly, the Court should dismiss the Complaint and compel arbitration pursuant to the parties' agreement.

## Factual Background

FFC is a used car dealership operating in Miami-Dade, Broward and Palm Beach counties, and throughout Florida. Comp. ¶¶ 9, 15. According to Plaintiffs, in April 2017 and prior to purchasing a car from FFC, they visited FFC's website, found a used car they wanted to purchase, and then called FFC to confirm that the car was on the lot. *Id.* at ¶ 16. During the phone call, an FFC employee told them each to fill out an online form found on FFC's website under the "Financing" link. *Id.* at ¶ 17. Plaintiffs did so, filled out the "required" fields with their personal and residential information and checked the box agreeing that FFC could perform a "soft" credit inquiry for purposes of credit prequalification. *Id.* at ¶ 18. FFC's financing website includes a statement that "[t]he best part is there is no Social required so there is no effect on your credit score." *Id.* at ¶ 19. Plaintiffs claim that they were notified via the FFC website that a soft inquiry was performed, but Plaintiffs received information that FFC pulled a "hard" credit report and that the consumer report notified Plaintiffs that the FFC inquiry could stay on their consumer report until May 2019. *Id.* at ¶ 20.

The distinction between a "soft" and "hard" credit inquiry is substantial; a "hard" inquiry reduces a consumer's credit score, remains on the consumer's credit report for two years and contains substantially more confidential and personal information than a "soft" inquiry. In contrast, a "soft" inquiry does not appear on the consumer's credit report to any inquiring party and does not lower an individual's credit score. *Id.* at ¶ 21. Plaintiffs allege that FFC, through its website, represented that FFC would only obtain Plaintiffs' credit reports through a "soft" inquiry

3

and that, by submitting the website form, Plaintiffs and the putative class members only agreed to a "soft" inquiry.  *Id.* at ¶¶ 22-23.

Plaintiffs allege that, at the time they submitted out the online form and agreed to a "soft" credit pull, they did not initiate a vehicle purchase transaction and FFC had no permissible purpose to obtain their "hard" credit report.  *Id.* at ¶ 24.  Plaintiffs claim that they did not provide written instructions to FFC authorizing a "hard" credit pull.  *Id.*  Only later did Plaintiffs learn that FFC, without written authorization, had obtained their credit report through a "hard" credit inquiry.  *Id.* at ¶ 25.  Plaintiffs claim that FFC has routinely and systematically obtained credit reports on prospective customers with no permissible purpose or written consent, and does so under false pretenses, by misrepresenting that FFC will only access a "soft" inquiry but then conducting a "hard" inquiry, resulting in a record on FFC's customers' consumer reports, disclosure of unauthorized private information and a reduction in credit score.  *Id.* at ¶¶ 28-29.

On April 15, 2017, Plaintiffs entered into a Retail Installment Sale Contract ("RISC") and Purchase Order with FFC for the purchase and financing of a used car.  NOF Ex. A (Farahmand Decl. at ¶¶ 4, 6); NOF Ex. C and D.  The RISC includes a broad arbitration provision covering "[a]ny claim or dispute … between [Plaintiffs] and [FFC], which arises out of or relates to [Plaintiffs'] credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)."  NOF Ex. C at 6.  The RISC also waives any right to bring or participate in a class action.  *Id.*  Plaintiffs acknowledged and agreed to the arbitration provision, including the following bold print directly above their signatures:

> **You agree to the terms of this contract.  You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it.  You acknowledge that you have read all pages of this contract, *including the arbitration provision above*, before signing below.**

4

*Id.* (italics added); *see also id.* at 2 (signing "Agreement to Arbitrate").

The Purchase Order also contains an equally broad arbitration provision as well as a requirement that, "[b]efore any party institutes an action, other than one that is expressly outside the scope of the arbitration provision, the parties must first mediate the dispute before a court certified mediator." *See* NOF Ex. D at 3 § G.

Plaintiffs allege that FFC's conduct has caused Plaintiffs and putative class members injury, including invasion of privacy, informational injuries, reductions in credit scores, as well as having had their personal identifying information disseminated to FFC and, upon their information and belief, to its related information-sharing affiliates, and have been subjected to increased risk of identity theft and data breaches, adverse effects on their ability to qualify for a mortgage or other loan or to rent an apartment, and in searching for employment, causing consequential anxiety and emotional distress. *Id.* at ¶ 32.

Plaintiffs seek to certify a class action comprised of all persons within the United States and Florida who had a hard credit inquiry performed by FFC without authorization within four years of filing the Complaint through final judgment. *Id.* at ¶ 33. Plaintiffs anticipate hundreds or thousands of class members. *Id.* at ¶ 38. Plaintiffs bring causes of action for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (Count I), and the Florida Fair Credit Reporting Act, Fla. Stat. § 501.005(16) (Count II).

## ARGUMENT

### I.   Not Limited to Four Corners

The Court is not limited to the four corners of the Complaint in ruling on a motion to compel arbitration, which is treated as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1293 (S.D.

5

Fla. 2017) (considering contracts with arbitration clauses attached to motion to compel); *Joinville v. Express Automotive, Inc.*, 2017 WL 8159333, at *3-4 (S.D. Fla. Jul. 11, 2017) (considering contract containing arbitration provision attached to motion to compel arbitration); *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1324 (S.D. Fla. 2016) (noting that on motion to compel arbitration, "the court may consider the pleadings, documents of unconsented validity, and affidavits or depositions submitted by either party.") (quotation omitted). Accordingly, the Farahmand Declaration and exhibits are properly before the Court and can be considered in ruling on this motion.

## II.     The "Gateway" Determination Must Be Submitted To Arbitration

Plaintiffs do not dispute the RISC or related purchase contracts.[2] The arbitration provision submits the issues of scope and arbitrability to an arbitrator, not a court. Thus, this Court must enforce the parties' agreement. *See Rent-A-Ctr.*, 561 U.S. at 68-69, 130 S. Ct. at 2777-89; *Parnell*, 804 F.3d at 1148; *Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005) (reversing district court's denial of motion to compel arbitration; arbitration clause provided that issues with respect to existence, scope or validity of arbitration agreement would be determined by arbitrator); *Rotelli Pizza & Pasta, Inc. v. AEG Restaurant Group, LLC*, 2010 WL 11603034, at *2 (S.D. Fla. Jul. 20, 2010) ("If language of the arbitration agreement 'clearly and unmistakably requires the arbitrator to decide, in the first instance, the scope of the arbitration provision,' then a court should compel arbitration when the parties dispute the construction of an arbitration provision.") (quoting *Mercedes Homes, Inc. v. Colon*, 966 So. 2d 10,

---

[2] Indeed, Plaintiffs cannot dispute them because they originally sued FFC in Miami-Dade Circuit Court and alleged that they "entered into a Retail Installment Sale Contract with FFC for the purchase and financing of a used vehicle." *See* NOF, Ex. E (State Court Complaint at ¶ 4 and Exhibit 1).

6

12 (Fla. 5th DCA 2007)); *Harrington v. Regions Bank*, 2016 WL 367842, at *1 (M.D. Fla. Jan. 29, 2016) (finding arbitration clause delegation provision "clearly and unmistakably delegate[s] the determination of arbitrability to the arbitrator" and "pursuant to the delegation clauses contained within the arbitration provisions, the Court hereby submits the determination of whether or not the TCPA claim is subject to the arbitration agreement to the arbitrator.").

### III.       Plaintiffs Agreed to Arbitrate Their Claims Against FFC

Through the RISC and Purchase Order, Plaintiffs agreed (multiple times) to arbitrate *any* claim arising out of or relating to the contract or their credit application and waived any right to bring or participate in a class action. The RISC's arbitration provision is clear:

**ARBITRATION PROVISION**
**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

*Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.* If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. *Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may*

7

> *have to arbitrate a class action.* You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

NOF Ex. C, RISC at 6 (emphasis added).

Any arbitration is governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and not by any state law concerning arbitration. *Id.* Plaintiffs acknowledged and agreed to the arbitration provision, including the following bold print directly above their signatures:

> **You agree to the terms of this contract.  You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it.  You acknowledge that you have read all pages of this contract,** *including the arbitration provision above***, before signing below.**

*Id.* (italics added); *see also id.* at 2 (signing "Agreement to Arbitrate").

Plaintiffs again acknowledged and agreed to arbitration through their Purchase Order with FFC, which provided as follows:

> G.      Mandatory Mediation:  Before any party institutes an action, other than one that is expressly outside the scope of the arbitration provision, the parties must first mediate the dispute before a court certified mediator, which mediation shall be conducted in the county where FFC is situated.  The parties shall jointly select the mediator and equally divide the cost of the mediation.  The parties shall use good faith in selecting the mediator and participating in the mediation.[3]
>
> H.      ARBITRATION:  Dealer and Customer agree that any controversy, claim, suit, demand, counterclaim, cross claim, or third party complaint, ***arising out of, or relating to this Order or the parties' relationship*** (whether statutory or otherwise and irrespective of whether the Financing Approvals were obtained), ***including***, but not limited to any matter ***that may have induced the Customer to enter into a relationship with Dealer*** (collectively referred to as Claims), as well as the validity of this provision, shall be submitted to final and binding arbitration in the county and state where Dealer is situated.

---

[3] Plaintiffs also failed to comply with this contractual prerequisite, another basis for dismissal. *See infra* at § IV.

8

1.      The Parties agree that any Claim shall be arbitrated by a single arbitrator on an individual basis and not as a class action. Customer expressly waives any right it may have to arbitrate a class action.

\*\*\*

5.      This arbitration requirement shall not apply to: (a) any action by Dealer for repossession of the Vehicle (but it does apply to any counter-claim thereto except as otherwise provided in this paragraph; or (b) any action within the jurisdiction of the small claims court as set forth in Florida Rule of Court 7.00(b). CUSTOMER UNDERSTANDS AND AGREES: (1) THAT IF A DISPUTE IS ARBITRATED, CUSTOMER WILL GIVE UP THE RIGHT TO A TRIAL BY A COURT; (2) THAT IF A DISPUTE IS ARBITRATED, CUSTOMER WILL GIVE UP THE RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS CLAIM AGAINST DEALER, INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS; (3) DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT CUSTOMER AND DEALER WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION; (4) TO RESOLVE ALL DISPUTES WITH DEALER BY BINDING ARBITRATION RATHER THAN LITIGATION EXCEPT AS SPECIFICALLY SET FORTH ABOVE; AND (5) THAT NOTWITHSTANDING ANYTHING TO THE CONTRARY, TO WAIVE ANY AND ALL RIGHT TO ANY TRIAL BY JURY FOR ANY CLAIM NOTWITHSTANDING THE ENFORCEABILITY OF THIS PROVISION.

NOF Ex. D, Purchase Order at 3 (emphasis added).

Arbitration agreements and class action waivers are enforced according to their terms, including in consumer cases. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S. Ct. 1740, 1748-49 (2011) (holding that Federal Arbitration Act preempted California rule regarding unconscionability of class arbitration waivers in consumer contracts). Federal policy favors arbitration and "any doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration." *Jensen v. Rice*, 809 So. 2d 895, 899 (Fla. 3d DCA 2002) (citing *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S. Ct. 1248 (1989); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 560 U.S. 1, 24-25, 103 S. Ct. 927 (1983)). While the parties' intentions control, in interpreting an arbitration clause,

9

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

"those intentions are generously construed as to issues of arbitrability." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346 (1985)).

Here, the RISC and Purchase Contract plainly apply to Plaintiffs' claims against FFC as they require arbitration of "any claim or dispute" between Plaintiffs and FFC "or our employees, agents, successors or assigns," and "which arises out of or relates to" the Plaintiffs' vehicle purchase, the contract or their credit applications. This includes "any matter that may have induced the Customer to enter into a relationship with [FFC]." *See Jensen*, 809 So. 2d at 899-900 (arbitration clause applying to "any dispute, difference or controversy arising under [the] Agreement and involving the payment of money" applied to fraudulent inducement claim) (brackets in original); *Dye v. Tamko Building Products, Inc.*, 908 F.3d 675 (11th Cir. 2018) (affirming order compelling arbitration and dismissing lawsuit by homeowners against shingle manufacturers where arbitration provision was contained on shingle packaging opened by roofer, rather than plaintiff homeowner). Plaintiffs' allegations and claims fall squarely within the scope of the RISC and Purchase Order. If and to the extent Plaintiffs could somehow contend otherwise, that question is for the arbitrator. *See supra* at § II (and cases cited).

### IV.     **Plaintiffs Failed to Comply with Pre-Suit Mediation Requirement**

As a condition precedent to bringing any claims in connection with their vehicle purchase, Plaintiffs are required to "first mediate the dispute before a court certified mediator." Purchase Order at 3 § G. Plaintiffs' failure to comply with this contractual prerequisite requires dismissal. *3-J Hosp., LLC v. Big Time Design, Inc.*, 2009 WL 3586830, at *2 (S.D. Fla. Oct. 27, 2009) ("Where the parties' agreement requires mediation as a condition precedent to arbitration or litigation, the complaint must be dismissed.") (citing *Kemiron Atlantic, Inc. v. Aguakem Intern., Inc.*, 290 F.3d 1287 (11th Cir. 2002)).

10

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

## V.     Plaintiffs Lack Standing

Dismissal is also appropriate because Plaintiffs fail to sufficiently allege actual damages under the Fair Credit Reporting Act and because determination of the putative class members would require a case-by-case examination of the date on which each putative member first learned of the alleged violation. Standing requires Plaintiffs to have (1) suffered an injury in fact, (2) that is fairly traceable to FFC's conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992)). Although well-pled allegations are accepted, *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990), the Court need not "'speculate concerning the existence of standing or piece together support for the plaintiff.'" *Correa v. BAC Home Loans Servicing LP*, 853 F.Supp.2d 1203, 1207 (M.D. Fla. 2012) (quoting *Lujan v. Defenders of Wildlife, supra* at 560–61 (1992)). Plaintiffs must plead injury in fact, *see Guerrero v. Target Corp.,* 889 F. Supp. 2d 1348, 1353 (S.D. Fla. 2012), and "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). Injury in fact is not satisfied merely by injury to other class members. *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (citing *Warth v. Seldin,* 422 U.S. 490, 502 (1975)).

### A.     No Allegations of Actual Damages

A mere statutory violation is not sufficient to establish injury in fact, which requires a plaintiff to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 548 (citing *Lujan*, 504 U.S. at 560). To be particularized, the injury "must affect the plaintiff in a personal and individual way," and requires that the "plaintiff personally suffered some

11

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

actual or threatened injury." *Id.* (quotations omitted).  For an injury to be concrete, it must be "'*de facto*'; that is, it must actually exist." *Id.*

Here, Plaintiffs fail to sufficiently allege any injury in fact and thus lack standing.  Plaintiffs conclusorily allege that class members suffered injuries which were "particularized and concrete," but suggest that class statutory damages are "ideal and appropriate" given the difficulty of quantifying them.  *See* Comp. ¶ 32.  However, while Plaintiffs list various injuries the types of which could have been suffered by putative class members as a result of having FFC conduct an unauthorized "hard" credit inquiry, Plaintiffs do not allege what actual damages ***they*** incurred as a result of FFC's alleged actions.  Plaintiffs further speculate about other *possible* damages which could theoretically result, such as the "increased risk of identity theft and/or a data breach."  These are not the types of "particularized and concrete" damages sufficient to confer standing.  Having failed to allege facts constituting a "particularized and concrete" injury, Plaintiffs cannot claim to adequately represent the interests of those who have may have suffered such injury.

### B.   Putative Class Includes Time-Barred Class Members

Plaintiffs seek to certify a class action on behalf of all persons who, from April 11, 2015 through the present visited FFC's website and, without any permissible purpose or authorization, had a "hard" credit inquiry conducted by FFC rather than the stated "soft" inquiry represented on the website.  Comp. ¶ 1.  The statute of limitations under the Fair Credit Reporting Act is the earlier of:

> (1)   2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
>
> (2)   5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p.

12

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

The determination as to when each putative class member discovered the alleged violation can only be made on an individual, case-by-case basis, thus precluding class treatment. *See LaBauve v. Olin Corp.*, 231 F.R.D. 632, 673-75 (S.D. Ala. 2005) (class certification inappropriate where limitations period was required to be determined on plaintiff-by-plaintiff basis: "Courts have found that disparate, individualized assessment of the statute of limitations issue itself may cause individual considerations to predominate for purposes of a Rule 23(b)(3) inquiry.") (citing *O'Connor v. Boeing North American, Inc.,* 197 F.R.D. 404, 414 (C.D. Cal. 2000) ("Based on the individualized, fact-intensive nature of the necessary inquiry in this case, the statute of limitations issues preclude a finding that common issues predominate over individual issues."); *Corley v. Entergy Corp.,* 220 F.R.D. 478, 487-88 (E.D. Tex. 2004) (reasoning that limitations issues defeat predominance because issues of whether individual landowners' claims are timely and whether equitable tolling applies are not amenable to class treatment).

## CONCLUSION

The Court should dismiss the Plaintiffs' Class Action Complaint and compel arbitration.

Respectfully submitted,

**GARBETT, ALLEN & ROZA, P.A.**
*Counsel to FFC*
Brickell City Tower, Suite 3100
80 S.W. 8th Street
Miami, Florida 33130
Tel:  (305) 536-8866

By:      /s/ Brian P. Yates
        Philip A. Allen, III, FBN 338575
        pallen@garlawfirm.com
        Brian P. Yates, FBN 071257
        byates@garlawfirm.com

## **CERTIFICATE OF SERVICE**

I certify that on April 9, 2019, a copy of the foregoing was electronically filed and furnished via CM/ECF to all counsel listed on the service list below.

/s/ Brian P. Yates

**SERVICE LIST**

Lance A. Harke, Esq.
lharke@harkelaw.com
Tammi A. Calarco, Esq.
tcalarco@harkelaw.com
Harke Law LLP
9699 NE Second Avenue
Miami Shores, Florida 33138
*Counsel to Plaintiffs*

14

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012